# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE SWERVEPAY ACQUISITION, LLC | )<br>) | Consolidated C.A. No.<br>2021-0447-KSJM |

## POST-TRIAL MEMORANDUM OPINION
## ADDRESSING LACHES

Date Submitted: July 10, 2025
Date Decided: July 30, 2026

Peter J. Walsh, Jr., Nicholas D. Mozal, Ryan M. Crowley, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Orion Armon, COOLEY LLP, Denver, Colorado; Luke Cadigan, Timothy Cook, COOLEY LLP, Boston, Massachusetts; Caroline Pignatelli, Alessandra Rafalson, Katelyn Kang, COOLEY LLP, New York, New York; Matthew Martinez, COOLEY LLP, San Diego, California; Bradley Levison, Carrie A. Herschman, HERSCHMAN LEVISON PLLC, Chicago, Illinois; *Counsel for SPOSC Investment Holdings, LLC, Jaeme Adams, Katrina Adams, and Christopher Hamilton.*

A. Thompson Bayliss, Caleb Theriot, ABRAMS & BAYLISS LLP, Wilmington, Delaware; Jay P. Lefkowitz, Dan Cellucci, Mary T. Reale, Amal El Bakhar, KIRKLAND & ELLIS LLP, New York, New York; Anna Rotman, KIRKLAND & ELLIS LLP, Houston, Texas; Jeremy Fielding, KIRKLAND & ELLIS LLP, Dallas, Texas; *Counsel for OSC Investment, L.P., OSC Investment GP, LLC, New Mountain Capital, LLC, New Mountain Partners V, L.P., New Mountain Investments V, LLC, BSIP OS, LLC, Eir Partners LLC, and Robert Wechsler.*

**McCORMICK, C.**

This is the second post-trial decision issued in litigation arising from OSC Investment, L.P.'s acquisition of SwervePay, LLC ("Legacy SwervePay").[1] In post-trial briefing, each side argues that aspects of the other's complaint are time-barred. Buyers seek dismissal of Sellers' claims against a group of defendants first added in their first amended complaint—New Mountain Partners V, L.P. ("Fund V LP"), New Mountain Investments V, LLC ("Fund V GP"), BSIP OS, LLC, and Eir Partners LLC (collectively, the "Newly Added Defendants").[2] Sellers seek dismissal of Buyers' sole remaining claim for fraud based on misrepresentations concerning SwervePay's contract with Worldpay LLC (the "Worldpay Contract"), which was first mentioned in Buyers' second amended complaint.[3] The court agrees with both sides. This decision dismisses Sellers' claims against the Newly Added Defendants and Buyers' sole remaining claim against Sellers.

---

[1] This opinion refers to OSC Investment, L.P.; OSC Investment GP, LLC; New Mountain Capital, LLC; New Mountain Partners V, L.P.; New Mountain Investments V, LLC; BSIP OS, LLC; Eir Partners LLC; SwervePay Holdings, LLC; OSC Payments, Inc.; and Robert Wechsler collectively as "Buyers" and to SPOSC Investment Holdings, LLC; Jaeme Adams; Katrina Adams; and Christopher Hamilton collectively as "Sellers." This opinion cites to: C.A. No. 2021-0447-KSJM docket entries (by docket "Dkt." number); trial exhibits (by "JX-" number); the trial transcript, Dkts. 611–14, 626 ("Trial Tr."); and stipulated facts in Section II of the Parties' Stipulation and Pre-Trial Order, Dkt. 584 ("PTO"). Before the acquisition, Legacy SwervePay owned the SwervePay business. PTO ¶¶ 1, 55–56. Legacy SwervePay changed its name to SPOSC Investment Holdings, LLC on February 26, 2020. *Id.* ¶ 55. An entity called SwervePay Acquisition, LLC ("New SwervePay") then acquired the business from Legacy SwervePay. *Id.* ¶ 81. New SwervePay changed its name to SwervePay, LLC on April 8, 2020. *Id.* For simplicity, this decision refers to the business and its operations generally as "SwervePay."

[2] Dkt. 637 ("Buyers' Post-Trial Opening Br.") at 90–92.

[3] Dkt. 639 ("Sellers' Post-Trial Reply Br.") at 89–90.

# I. LEGAL ANALYSIS

The equitable doctrine of laches derives from the maxim that "equity aids the vigilant, not those who slumber on their rights."[4] Claims filed after the applicable limitations period are "considered presumptively untimely, and . . . barred under laches" unless a tolling doctrine applies or the claims relate back to a timely filed claim.[5] Thus, "the court may dismiss a [claim] on grounds of laches if 'it is clear . . . that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it.'"[6]

The first step in a laches analysis is determining when the claim accrued.[7] A claim accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action."[8] "For tort claims, . . . the wrongful act occurs at the time of injury."[9] Accrual occurs at the moment any harm—however minor—results from the alleged wrongful conduct, irrespective of the plaintiff's awareness.[10]

---

[4] *Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009) (quoting 2 *Pomeroy's Equity Jurisprudence* §§ 418, 419 (5th ed. 1941)).

[5] *In re Ebix, Inc. S'holder Litig.*, 2014 WL 3696655, at *8 (Del. Ch. July 24, 2014).

[6] *Bocock v. INNOVATE Corp.*, 2022 WL 15800273, at *11 (Del. Ch. Oct. 28, 2022) (quoting *Reid*, 970 A.2d at 183).

[7] *Largo Legacy Gp., LLC v. Charles*, 2021 WL 2692426, at *9 (Del. Ch. June 30, 2021) ("The statute of limitations begins to run at the time that the cause of action accrues[.]") (quoting *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 584 (Del. Ch. 2007)).

[8] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004).

[9] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020).

[10] *Id*. at 732–33.

## A. Sellers' Claims Against The Newly Added Defendants

Sellers first named the Newly Added Defendants as defendants in their Amended Complaint filed on October 4, 2023.[11] The Newly Added Defendants face claims of fraudulent inducement and conspiracy to commit fraud. Claims sounding in fraud have a three-year statute of limitations under Delaware law,[12] as do claims for civil conspiracy.[13]

Sellers based their fraudulent inducement claims against the Newly Added Defendants on an email that New Mountain Capital's Michael Oshinsky sent to Jaeme Adams[14] on February 8, 2020 (the "February 8 Email")[15] representing that Ontario Systems, LLC ("Ontario") had $34 billion in payments volume. So the fraud claims accrued on February 8, 2020. Sellers predicate their claim of civil conspiracy on the fraud claims.[16] Sellers' claim of civil conspiracy therefore also accrued on February 8, 2020.

---

[11] *Compare* Dkt. 238 ("Sellers' Am. Compl."), *with* Dkt. 1 ("Sellers' Original Compl."). Sellers included the Newly Added Defendants again in their Second Amended Complaint. Dkt. 325 ("Sellers' Second Am. Compl.").

[12] 10 *Del. C.* § 8106; *Winklevoss Cap. Fund, LLC v. Shaw*, 2019 WL 994534, at *5 (Del. Ch. Mar. 1, 2019).

[13] *Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1064 (Del. Ch. 1989).

[14] This decision refers to Jaeme Adams by his first name to distinguish him from his spouse, Katrina Adams. The court intends no familiarity or disrespect.

[15] *See* Buyers' Post-Trial Opening Br. at 90–91; JX-685.

[16] Buyers' Post-Trial Opening Br. at 90–91.

Sellers do not dispute that the claims accrued on February 8, 2020.[17] Thus, under a three-year statute of limitations, Sellers' claims against the Newly Added Defendants are time-barred unless they relate back under Court of Chancery Rule 15(c) or were tolled. Sellers bear the burden of proving both theories.[18]

### 1. Relation Back

Sellers argue that the statute of limitations does not apply to their Amended Complaint because their claims against the Newly Added Defendants relate back to Sellers' Original Complaint under Rule 15(c).[19]

"The purpose of Rule 15(c) 'is to permit amendments to pleadings when the limitations period has expired, so long as the opposing party is not unduly surprised or prejudiced.'"[20] Rule 15(c) states that an amendment to a pleading relates back to the date of the original pleading when:

> (1) the law that provides the applicable statute of limitations allows relation back;
>
> (2) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(2) is satisfied and, within 120 days of the filing of the complaint,

---

[17] Dkt. 634 ("Sellers' Post-Trial Opening Br.") at 82–84; Sellers' Post-Trial Reply Br. at 71–73.

[18] *Fike v. Ruger*, 754 A.2d 254, 261 (Del. Ch. 1999), *aff'd*, 752 A.2d 112 (Del. 2000); *Henderson v. Best Buy*, 2011 WL 382857, at *2 (Del. Super. Feb. 3, 2011).

[19] Sellers' Post-Trial Opening Br. at 84 n.36.

[20] *Buttonwood Tree Value P'rs, L.P. v. R. L. Polk & Co.*, 2023 WL 9053173, at *10 (Del. Ch. Dec. 29, 2023) (quoting *Chaplake Hldgs., Ltd. v. Chrysler Corp.*, 766 A.2d 1, 7 (Del. 2001)).

4

or such additional time the Court allows for good cause shown, the party to be brought in by amendment:

(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; and

(B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[21]

Sellers' Amended Complaint added several new defendants, so Rule 15(c)(3) is the relevant provision. Sellers' Amended Complaint satisfies several of Rule 15(c)(3)'s necessary elements. The claims against the Newly Added Defendants—that they conspired to fraudulently induce Sellers into the purchase agreement—arise out of the same transaction described in Sellers' Original Complaint, which satisfies Rule 15(c)(2). And the Newly Added Defendants received notice of this action through their relationships with parties named in Sellers' Original Complaint, which satisfies Rule 15(c)(3)(A).[22] Thus, the analysis turns on Rule 15(c)(3)(B): whether Sellers proved that the Newly Added Defendants knew or should have known that they would have been defendants but for a "mistake" concerning the identity of the proper party.

Delaware has traditionally followed a "strict" approach to mistake under Rule 15(c), meaning that "a mistake occurs when the petitioner makes a true mistake as

---

[21] Ct. Ch. R. 15(c).

[22] Fund V LP is managed by Defendant New Mountain Capital. PTO ¶ 61. Fund V GP is Fund V LP's general partner. *Id.* ¶ 62. Eir Partners is a management partner of Defendant OSC Investment, L.P. *Id.* ¶ 68. BSIP OS, LLC ("Blue Star") is an affiliate of Blue Star Innovation Partners GP, LLC, which was named in Sellers' Original Complaint. *Id.* ¶ 67; Sellers' Original Compl.

to the identity or name of the proper party as opposed to where the plaintiff merely chose the wrong party to sue."[23] Although the U.S. Supreme Court recently instructed that the inquiry under Rule 15(c)'s federal corollary that "should focus solely on 'what the party to be added knew or should have known[,]'"[24] applications of the "strict" approach remain good law in Delaware.[25] "[A] party seeking relief under Rule 15(c) must still show it was mistaken as to the identity of the proper defendant."[26]

Sellers have not demonstrated that they were mistaken as to the identities of the Newly Added Defendants. Fund V LP, Eir Partners, and Blue Star are parties to OSC Investment, L.P.'s Limited Partnership Agreement.[27] The Limited Partnership Agreement's capitalization table shows that New Mountain holds its ownership interest through Fund V LP.[28] Fund V GP signed the Limited Partnership Agreement on Fund V LP's behalf, and Brett Carlson, CEO of Eir Partners, signed it

---

[23] *CCS Invs., LLC v. Brown*, 977 A.2d 301, 313 (Del. 2009), *as corrected* (Aug. 10, 2009).

[24] *DiFebo v. Bd. of Adjustment of New Castle Cnty.*, 132 A.3d 1154, 1158 (Del. 2016) (quoting *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 539 (2010)).

[25] *See Allmaras v. Bd. of Adjustment of Sussex Cnty.*, 238 A.3d 142, 2 (Del. 2020) (TABLE) (stating that the U.S. Supreme Court's guidance in *Krupski* "does not need to be . . . squared with our previous 'strict' interpretation of Rule 15(c)" in every case); *Mishoe v. City of Dover Planning Comm'n*, 2025 WL 786049, at *12 (Del. Super. Mar. 12, 2025) ("In *Allmaras II*, the Delaware Supreme Court affirmed the lower court's application of the strict requirement. When it did, it expressly declined to apply *Krupski* in a manner that changed Delaware's approach.").

[26] *Allmaras*, 238 A.3d at 2.

[27] JX-279 at 76, 90, 94.

[28] *See id.* at 76, 103.

on behalf of Eir Partners.[29]  Sellers' Original Complaint contains numerous allegations accusing New Mountain and Carlson of committing fraud in connection with the acquisition.[30]  As parties to the Limited Partnership Agreement, Sellers knew the Newly Added Defendants' identities and could have concluded that they were proper defendants at the time Sellers' Original Complaint was filed.[31]  The claims against the Newly Added Defendants do not relate back under Rule 15(c)(3).

### 2.      Tolling

Sellers argue that the limitations period was tolled.[32]  "The Delaware courts recognize three doctrines that may toll the statute of limitations: (1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable tolling following a breach of fiduciary duties."[33]  But actual notice or inquiry notice cuts off any tolling period.[34]  A plaintiff is on inquiry notice of a claim when she "becomes aware of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if

---

[29] *Id.* at 76, 90; PTO ¶ 73.

[30] *See, e.g.*, Sellers' Original Compl. ¶¶ 8, 43–44, 50–52, 54, 57–62, 103.

[31] *See Mishoe*, 2025 WL 786049, at *12 (declining to invoke Rule 15(c)(3) relation back where the plaintiff knew the newly added defendants' identities before filing and the original pleading contained allegations depicting them as adverse to the plaintiff).

[32] Sellers' Post-Trial Opening Br. at 83–84.

[33] *Murray v. Rolquin*, 2023 WL 2421687, at *10 (Del. Ch. Mar. 9, 2023) (quoting *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *17 (Del. Ch. Dec. 1, 2009)).

[34] *See Forman v. CentrifyHealth, Inc.*, 2019 WL 1810947, at *7 (Del. Ch. Apr. 25, 2019); *Brown v. Court Square Cap. Mgmt., L.P.*, 2022 WL 841138, at *3 (Del. Ch. Mar. 22, 2022).

pursued, could lead to the discovery of the injury."[35] Tolling does not extend beyond the point when the plaintiff "was objectively aware, or should have been aware, of facts giving rise to the wrong."[36]

Sellers argue that the limitations period on the fraud and civil conspiracy claims was tolled until the fall of 2020, when Jaeme learned that Houlihan Lokey had advised Ontario that it would incur very little liability on the earnouts, even before the earnout period had begun.[37] Buyers, on the other hand, argue that Sellers were on inquiry notice of their claims by June 8, 2020, when Durrett emailed Jaeme a December 2019 analysis showing $5.2 billion in payments volume.[38]

Sellers do not dispute that Jaeme received Durrett's analysis on June 8, 2020 (the "June 8 Email").[39] Jaeme was tasked by Ontario's new CEO, Tim O'Brien, with investigating SwervePay's post-acquisition payments opportunity and tracking down the represented $34 billion in monetizable payments volume.[40] As part of that exercise, Jaeme was told in June, orally and in writing, that Durrett had previously created an estimate showing that Ontario had approximately $5 billion of payments

---

[35] *CentrifyHealth*, 2019 WL 1810947, at *7 (quoting *Whittington v. Dragon Gp. LLC*, 2009 WL 1743640, at *9 (Del. Ch. June 11, 2009)).

[36] *In re Tyson Foods, Inc.*, 919 A.2d at 585.

[37] Sellers' Post-Trial Opening Br. at 84.

[38] Buyers' Post-Trial Opening Br. at 91–92; JX-1058; Trial Tr. at 224:15–226:12 (J. Adams).

[39] JX-1058; Trial Tr. at 228:5–18, 247:23–248:6 (J. Adams).

[40] Trial Tr. at 214:4–11 (J. Adams).

volume flowing through its systems.[41] Durrett explicitly contrasted that figure with the $30+ billion figure from Blount.[42] And on June 8, Durrett sent Jaeme his analysis, which stated that payments volume was a tenth of what Jaeme initially thought.[43] These developments should have put Sellers on actual notice or at leasat inquiry notice of their fraud and conspiracy claims against Buyers.

Sellers object to this conclusion on several grounds.

First, they argue that nothing about the February 8 Email or Durrett's December 2019 analysis gave Jaeme a reason to suspect fraud, so they were not on inquiry notice of their claims.[44] They rely on this court's ruling denying Buyers' motion to dismiss the Sellers' Second Amended Complaint on laches grounds.[45] But in that motion to dismiss, Buyers argued that Sellers' claims against the Newly Added Defendants were time-barred *solely* because Sellers were on inquiry notice after Jaeme received an email from Durrett stating that he had conducted a "bottoms-up" analysis and concluded that the payments volume available to Ontario was $5.5 billion (the "June 1 Email").[46] Durrett did not send his December 2019 analysis in the June 1 Email.[47]

---

[41] JX-1035; JX-1058; Trial Tr. at 224:15–21 (J. Adams).

[42] JX-1035.

[43] JX-1058; JX-666.

[44] *See* Sellers' Post-Trial Reply Br. at 71–72.

[45] *Id.* at 72; *see also* JX-1799 ("7/9/2024 Hr'g Tr.") at 44:1–12, 45:19–22.

[46] Dkt. 335 at 59–60; *see also* JX-1035 ("We had a top-down TAM ($30B via Steve B) and bottoms-up SOM ($5.5B via JD)[.]").

[47] *See* JX-1035.

Drawing all reasonable inferences in Sellers' favor as the court must at the pleading stage, the court found that it was reasonably conceivable that the June 1 Email was insufficient to put Sellers on inquiry notice.[48] Sellers are no longer entitled to plaintiff-friendly inferences to establish their claims, and they bear the burden of proving tolling. The trial record reflects that Jaeme and Ontario team members were in active discussions regarding Ontario's payments volume and that Jaeme received Durrett's full analysis on June 8. The preponderance of the evidence demonstrates that Sellers were on notice of their claims by that date.

Second, Sellers argue that the June 8 Email did not put them on inquiry notice because Jaeme did not see the June 8 Email or the link containing Durrett's analysis at the time the email was sent.[49] And they argue that this was reasonable, because Jaeme, the Ontario team, Blue Star, and McKinsey were all tasked by O'Brien with investigating Ontario's payments volume and the different workstreams created "confusion" that obscured the June 8 Email.[50] But this argument is weak. Durrett sent the June 8 Email to only five recipients.[51] An email on the same thread sent less than two hours earlier is addressed to Jaeme.[52] And Jaeme was focused on

<hr>

[48] 7/9/2024 Hr'g Tr. at 44:1–45:22.

[49] Sellers' Post-Trial Reply Br. at 71–73.

[50] Sellers' Post-Trial Opening Br. at 83–84; *see also* Trial Tr. at 66:17–67:12, 214:4–15 (J. Adams), 990:6–991:15 (Durrett).

[51] JX-1058 at 1.

[52] *Id.* at 2.

investigating Ontario's payments volume.[53]  Sellers have not proven that there is any reason why Jaeme should not have read the June 8 Email or investigated its contents.

Finally, Sellers claim that tolling applies to Eir Partners because they had no notice of Eir Partners' involvement until May 2023 after receiving discovery.[54]  But Eir Partners' CEO Carlson—who is discussed in Sellers' Original Complaint[55]—was involved throughout the process and signed the Limited Partnership Agreement on Eir Partners' behalf.[56]  Sellers thus had inquiry notice of Eir Partners' involvement at the same time as the other Newly Added Defendants' involvement.

Because neither Rule 15(c) nor tolling applies to the fraud or civil conspiracy claims against the Newly Added Defendants, those claims are dismissed.

### B.  Buyers' Claim Against Sellers

Post-trial, Buyers' four counts in their Fourth Amended Complaint[57] narrowed to one count for contractual fraud based on the representations in Section 3.27 of the Membership Interest Purchase Agreement (the "Purchase Agreement").[58]

---

[53] Trial Tr. at 214:4–11 (J. Adams).

[54] Sellers' Post-Trial Opening Br. at 84.

[55] Sellers' Original Compl. ¶¶ 43–44, 62, 103.

[56] PTO ¶ 73.

[57] Dkt. 590 ("Buyers' Fourth Am. Compl.").

[58] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").  The court barred Buyers from bringing claims under Section 3.14(c) of the Purchase Agreement.  Dkt. 609 at 30:12–16 ("[R]aising a new contractual provision as a basis for breach right before trial is unfair.  So the causes of action that are based exclusively on Section 3.14(c) are struck, and they may not be included in the new pleading.").

Buyers claim that Legacy SwervePay knowingly made false representations and warranties in the Purchase Agreement by stating that it was not in breach of any "Material Contracts," even though it was actively breaching the Worldpay Contract.[59]

Like Sellers' fraud claims, Buyers' fraud claim is subject to a three-year statute of limitations. Buyers acquired SwervePay on February 24, 2020.[60] "'Because representations and warranties about facts pre-existing, or contemporaneous with, a contract's closing are to be true and accurate when made,' a breach of such representations and warranties 'occurs on the date of the contract's closing and hence the cause of action accrues on that date.'"[61] This reasoning extends to claims of contractual fraud based on a transaction agreement. Buyers' claim thus accrued on February 24, 2020, and the limitation period expired on February 24, 2023.

Buyers filed their Fourth Amended Complaint on October 24, 2024—after the statute of limitations had run. Thus, the claim can only survive if Buyers can demonstrate that tolling or relation back under Rule 15(c) applies. Buyers bear the burden of proof. Buyers do not argue that any tolling principle applies. They instead argue that Buyers' fraud claim satisfies Rule 15(c)(2) and relates back to prior complaints.[62]

---

[59] Buyers' Post-Trial Opening Br. at 96.

[60] PTO ¶ 93.

[61] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 2012 WL 3201139, at *17 (Del. Ch. Aug. 7, 2012) (quoting *GRT v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *6 (Del. Ch. July 11, 2011)).

[62] Dkt. 642 at 49–50 & n.21.

Buyers first mentioned Worldpay in their Second Amended Complaint.[63] The Fourth and Third Amended Complaints thus arguably related back to the Second Amended Complaint. But Buyers filed the Second Amended Complaint on October 3, 2023, after the limitations period expired.

Buyers must show, therefore, that their fraud claim based on the Worldpay Contract relates back to their Original Complaint filed on July 30, 2021 or the First Amended Complaint filed on November 4, 2021.[64]

Buyers made no mention of Worldpay in either of their first two complaints. Buyers' Original Complaint only states that Sellers had fraudulently misrepresented SwervePay's technological features and customer pipeline and had breached representations by failing to disclose that three large customers had adverse changes in their relationships with SwervePay.[65] That First Amended Complaint also did not mention Worldpay and again focused on allegedly misrepresented technology features, customer pipelines, and material customers.[66] There is nothing in the Original Complaint or First Amended Complaint, therefore, that would have placed Sellers on notice that they were being accused of fraud in connection with this discrete contract, the Worldpay Contract.

---

[63] *See, e.g.*, Dkt. 236 ("Buyers' Second Am. Compl.") ¶ 135.

[64] C.A. No. 2021-0666-KSJM, Dkt. 1 ("Buyers' Original Compl."); C.A. No. 2021-0447-KSJM, Dkt. 51 ("Buyers' First Am. Compl.").

[65] Buyers' Original Compl. ¶¶ 119–45.

[66] *See, e.g.*, Buyers' First Am. Compl. ¶¶ 170–85.

The alleged misrepresentation related to Worldpay does not connect to the allegations of the original pleading. Legacy SwervePay thus did not have notice under the First Amended Complaint that Buyers would bring a claim against it relating to the Worldpay Contract, which is a "determinative factor" under Rule 15(c)(2).[67]

Buyers could have asserted the claim based on the Worldpay Contract much earlier. Worldpay had notified SwervePay of its position that SwervePay was breaching its agreement with Worldpay in August 2020.[68] Worldpay shut down services for SwervePay's debt-collection customers in December 2020.[69] Ontario executives were aware of the Worldpay issues because they signed off on completing the client transition by the end of November 2020.[70] Buyers cannot obtain relief for a claim they failed to plead timely.

## II.   CONCLUSION

Sellers' claims against the Newly Added Defendants are dismissed. Judgment is entered for the Newly Added Defendants. Buyers' Fourth Amended Complaint is dismissed. Judgment is entered for SPOSC Investment Holdings, LLC, the lone defendant and Seller entity named in Buyers' Fourth Amended Complaint.

---

[67] *Buttonwood*, 2023 WL 9053173, at *10 (quoting *Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1065 (Del. Ch. 1989)).

[68] JX-2181 at 4; Trial Tr. at 242:6–21 (J. Adams).

[69] JX-2111 at 5–7.

[70] JX-2109 at 1.